# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

MELISSA ANNA ESTES, )
 )
                Plaintiff, ) Case No. 14-CV-65-JED-TLW
v. )
 )
LOVE, BEAL & NIXON, P.C., )
 )
                Defendant. )

## OPINION AND ORDER

**I.    Background**

There are multiple people in Oklahoma named Melissa Estes. One of them owed money on two judgments in Wagoner County, Oklahoma, obtained by the law firm Love, Beal & Nixon, P.C. (LBN). Melissa Anna Estes, the plaintiff in this case, is not the Melissa Estes who was the debtor on those judgments, but LBN served the plaintiff's employer, Best Buy, with garnishment papers in an attempt to collect on the judgments. The garnishment packet contained the judgment debtor's social security number (SSN). Best Buy and ADP, which is the company that performs Best Buy's payroll service, provided conflicting information as to whether the plaintiff was the judgment debtor. Despite plaintiff's repeated efforts to stop the garnishment of her pay, money was withheld from her pay. The money was later returned to her.

Plaintiff alleges that LBN violated the Fair Debt Collection Practices Act (FDCPA). LBN seeks summary judgment on plaintiff's claims, arguing that the FDCPA does not apply, it was Best Buy's fault that money was withheld, so that there were no violations of the FDCPA by LBN and, even if LBN violated the FDCPA, LBN is not liable because the violation was the result of a bona fide error. The record evidence, taken in the light most favorable to plaintiff, is summarized in further detail below.

## II.   The Evidence

On August 29, 2013, LBN account manager Rebecca Miramontes performed internet searches for potential places of employment of the judgment debtor. On linkedin.com, Miramontes found a listing for a Melissa Estes who was employed by Best Buy in Tulsa, Oklahoma. As a result, she "believed it was possible that the judgment debtor was employed by Best Buy," so she added Best Buy as a potential place of employment, and LBN thereafter issued garnishments to Best Buy. (Doc. 49-2 at 2). Miramontes's internet search also located a school teacher named Melissa Estes in Edmond, Oklahoma. Miramontes believed that "one of them" – either the Best Buy employee or the Edmond school teacher – was likely the judgment debtor. (Doc. 59-1 at 69 of 179). Miramontes acknowledged that she could have obtained a credit report on the judgment debtor in an attempt to obtain or verify employment information and that such information in the judgment debtor's credit report would be "the most accurate information" about the debtor. (*Id.* at 66). However, Miramontes did not run a credit report on the debtor, because LBN trained her that "[i]t cost money to order a credit report, so if we have a strong belief on information, we try to avoid that." (*Id.* at 66-67).

The garnishments were issued to Best Buy in an attempt to collect on Wagoner County judgments in two cases: one in favor of Atlantic Credit & Finance Inc. (ACF) in Case No. CS-2008-408; the other in favor of Capital One Bank in Case No. CS-2011-854. In the garnishment affidavit in each case, an LBN attorney submitted a statement, under penalty of perjury, that the attorney

> verily believe[d], as an attorney for the plaintiff, that Best Buy Co. of Minn Inc. is indebted to or has property within its possession or under its control, belonging to the Judgment Debtor/ Defendant Melissa Estes; in the action or execution and that the indebtedness or property is, to the best of my knowledge and belief as the person making this affidavit, not by law exempt from seizure or sale upon execution.

(Doc. 59-1 at 12 of 179; *see also id.* at 7 [naming the debtor as Melissa D. Estes]).[1] The garnishment papers in the 2011 case were filed on December 13, 2013, and the garnishment was initiated in the 2008 case on December 16, 2013.

On December 30, 2013, Best Buy filed its answer affidavit in the 2011 case and indicated that the judgment debtor was "Not Employed" there. (Doc. 49-1 at 37). On January 3, 2014, after plaintiff learned of the attempted garnishment, she contacted LBN by telephone. (Doc. 52, Ex. 2A [conventionally filed CD recordings of telephone calls]). Plaintiff spoke to Miramontes and informed her that plaintiff was not the same person as the judgment debtor on the garnishment. During the January 3 call, Miramontes advised plaintiff that Best Buy had informed LBN that plaintiff was not the judgment debtor such that the matter "has been cleared up by [plaintiff's] employer." (*Id.*).

On January 6, 2014, Best Buy filed conflicting garnishee's answer affidavits in the 2008 and 2011 cases. (Doc. 49-1 at 40, 46). Best Buy's answer in the 2008 case indicated that the judgment debtor was "Not Employed" there (*id.* at 46), but its answer filed that same day in the 2011 case indicated that the judgment debtor was an active employee, and Best Buy provided an earnings statement and calculation of garnishment withholdings from the plaintiff's paycheck (*id.* at 40).

On January 9, 2014, plaintiff learned of the intended garnishment withholding from her pay, and she promptly called LBN. She spoke to LBN account representative Melissa Longpine. (Doc. 52, Exh. 3A). During that call, plaintiff told Longpine that, while Miramontes had

---

[1] To commence a garnishment proceeding in Oklahoma, the plaintiff must file an affidavit that states, among other things, "[t]hat the plaintiff verily believes that some person, naming him, whether within or without the county, is indebted to or has property in his possession or under his control belonging to the defendant . . . in the action or execution and that the indebtedness or property is, to the best of the knowledge and belief of the person making such affidavit, not by law exempt from seizure or sale upon execution." *Okla. Stat.* tit. 12, § 1172(A)(6).

previously informed plaintiff that the garnishment had been cleared up, plaintiff's wages were "being garnished for somebody else." (*Id.*). Longpine noted that Best Buy had responded that the judgment debtor was "not employed" and that Longpine did not know why Best Buy was garnishing plaintiff. (*Id.*). Plaintiff asked that LBN send correspondence by facsimile to Best Buy to "terminate" the garnishment, but Longpine indicated that LBN would not do that. (*Id.*).

Longpine called the number for Best Buy's payroll service, stated that Best Buy was "garnishing the wrong person," and indicated that LBN would not "send a dismissal, because it's not the same person." (Doc. 53, Ex. 3B). The payroll service, ADP, indicated that LBN would receive a new garnishment answer, with wage withholding calculation. (*Id.*). After speaking to ADP, Longpine called plaintiff and indicated that the problem was the fault of Best Buy. (*Id.*). During that second January 9 call with plaintiff, Longpine stated that "we have the correct information, so you're going to have to talk to them," "[i]f you're not the same person, it's going to actually be between you and that employer, because it has nothing to do with us . . .," and "[i]t's out of our hands. Who we have is correct." (*Id.*).

Approximately $500.00 was withheld from plaintiff's January 10, 2014 paycheck. (Doc. 58-1 at 19 of 25). On January 13, 2014, plaintiff called LBN and again spoke to Miramontes. (Doc. 52, Ex. 2B). Plaintiff reminded Miramontes about their prior conversation and informed her that, notwithstanding Miramontes's prior indication on January 3, that the matter had been resolved, plaintiff's paycheck had been garnished. Plaintiff again asked that LBN send correspondence to clear up the confusion. Miramontes spent most of the call telling plaintiff that it was Best Buy's fault and that LBN had no responsibility to provide any correspondence to the employer. Miramontes stated that "we can only go by what they tell us." (Doc. 52, Exh. 2B). When plaintiff asked how LBN got information that plaintiff was employed at Best Buy,

4

Miramontes said "we can't advise that information," and "I can't advise you what was done," even though it was Miramontes who had included Best Buy as an employer for the judgment debtor, based upon plaintiff's linkedin.com profile. (*Id.*).

After the call from plaintiff, Miramontes called ADP. (Doc. 53, Ex. 2C). Miramontes attempted to make sure that ADP would correct the problem on its end. (*Id.*). Miramontes then called plaintiff to report that ADP had indicated that it would investigate and, if funds had been incorrectly withheld from plaintiff's pay, ADP would issue a refund. (*Id.*). LBN did not receive any of the funds that were withheld, and the amount of plaintiff's pay that was withheld was returned to her on January 15, 2014. (Doc. 58-1 at 19 of 25).

### III. Discussion

#### A. Applicability of the FDCPA

##### 1. "Debt Collector"

LBN argues that the FDCPA does not apply, because plaintiff "was not wronged by a debt collector," but was instead harmed by the actions of her employer, Best Buy. (Doc. 58 at 15; *see also id.* at 16). LBN further argues that, although it collects debt, plaintiff has not proved that LBN is a "debt collector" within the meaning of the FDCPA. (*Id.*; Doc. 64 at 1-3). The FDCPA's definition of "debt collector" is broad.

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another....

15 U.S.C. § 1692a(6). There are exceptions to the general definition of debt collector, but LBN does not argue that any of the exceptions apply to it.

The facts in this case, construed in plaintiff's favor, are consistent with a finding that LBN was acting as a debt collector when it filed garnishment proceedings and served plaintiff's

5

employer. In its reply brief, LBN offers strained arguments to avoid the label of "debt collector," but its own filings establish that the facts are at least in dispute, precluding summary judgment on that issue. For example, in its Amended Answer, LBN claimed it was "without sufficient information to admit or deny whether it is a debt collector," but admitted that it is "engaged in the collection of debt within the State and in so doing uses the mail and telephone." (Doc. 42 at 1, ¶ 2). LBN's supplement to the motion for summary judgment states that "LBN was engaged by [ACF] to collect an account for a debt owed by Melissa Estes...." (Doc. 58 at 5, ¶ 2). LBN similarly acknowledges that it was engaged by Capital One to "collect on an account for debt owed by Melissa D. Estes...." (*Id.* at 6, ¶ 5). In the underlying debt collection suits in Wagoner County, LBN provided the so-called "mini-Miranda" warning which is required by the FDCPA and which stated in part that LBN was a "debt collector" and was "attempt[ing] to collect a debt...." (Doc. 59-1 at 2 of 179).[2]

Moreover, Tracy Reed, one of LBN's representatives, testified as follows:

Q. Love, Beal & Nixon is a debt collector?

A. We collect debts, yes.

Q. Love, Beal & Nixon is required to follow the Fair Debt Collection Practices Act; is that correct?

A. Correct.

(Doc. 59-1 at 83-84 of 179). Reed submitted a post-deposition errata sheet, indicating that her first answer above should read "We collect debts, yes. My answer is based on the term debt collector as it is commonly used and not as defined by the FDCPA." (Doc. 64-1 at 1). That

---

[2] The warning statement that is required by the FDCPA to be provided by debt collectors under the act has been called the "mini-Miranda" warning by debt collectors and courts. *See, e.g., Lee v. Cohen, McNeile & Pappas, P.C.*, 520 F. App'x 649 (10th Cir. 2013); *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 359-60 (D.N.J. 2006); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1328 (S.D. Fla. 2009).

change does not erase Reed's original testimony or the other evidence indicating that LBN was acting as a debt collector when it served garnishment papers on plaintiff's employer.[3]

### 2. "Debt"

LBN also argues that the FDCPA did not apply because plaintiff "will be able to present no evidence to establish that the debt of the judgment debtor, which LBN sought to be [sic] collect, was 'debt' as defined by the FDCPA." (Doc. 58 at 17). Under the FDCPA, "'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). According to LBN, plaintiff cannot establish that the debts were incurred for personal, family, or household purposes.

In response, plaintiff again notes that, in the Wagoner County suits, LBN expressly treated the underlying debts as consumer debts to which the FDCPA applied, as LBN provided the FDCPA's mini-Miranda warning and expressly stated that it was a debt collector attempting to collect a debt.[4] The evidence also establishes that the judgment debtor was an individual, rather than a business and that at least one of the accounts was credit card debt incurred by the

---

[3] The Tenth Circuit has determined that, in certain circumstances, a district court should not consider deposition changes made in an attempt to affect the determination of summary judgment motions. *See, e.g., Havens v. Johnson*, 783 F.3d 776, n.3 (10th Cir. 2015); *Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002).

[4] A defendant's form notice consistent with the mini-Miranda warning is not, standing alone, particularly persuasive as to the "debt collector" determination. *See DeMaestri v. VeriFacts Inc.*, No. 11-CV-2430-WYD-KMT, 2012 WL 1192758 at *8 (D. Colo. Mar. 16, 2012) (unpublished). However, in this case, the mini-Miranda notice was not simply contained in one of LBN's forms, but was the first paragraph in each of the lawsuits that LBN filed against the judgment debtor. There is also further evidence in this case, including LBN's own sworn statements in discovery, supporting an inference that LBN considered itself a debt collector subject to the FDCPA.

individual.  Thus, plaintiff argues that the individual and personal characteristics of the debt give rise to a reasonable inference that the underlying debt was for the judgment debtor's personal purposes and satisfies the FDCPA.

In its reply briefing, LBN argues that plaintiff "had the ability to discover what the underlying debt was incurred for – she could have obtained the information directly from the judgment debtor." (Doc. 64 at 9). That argument is unpersuasive in light of the fact that LBN, with its debt collection resources at the ready, had such difficulty tracking down the judgment debtor and her assets. Moreover, plaintiff did request information regarding the underlying debt in discovery requests to LBN, but LBN objected to providing that information. (*See* Doc. 59-1 at 169-171). In its discovery responses, LBN objected "based on the financial privacy" of the judgment debtor, alleged that the records "are private and privileged, and should not be produced to the Plaintiff or her legal counsel," and expressly represented that "[p]roduction of the requested information *would be a violation* of [the FDCPA], including but not limited to 15 U.S.C.A. § 1692c(b)." (Doc. 59-1 at 170-172, emphasis added). Tracy Reed, a lawyer and representative of LBN, swore under oath that those discovery responses were "true and accurate." (Doc. 59-1 at 174).

LBN's current contentions that the FDCPA does not apply is directly contradicted by LBN's sworn, unqualified representations in its discovery responses that LBN's production of information about the underlying debt of the judgment debtor "would be a violation" of the FDCPA. Pursuant to its plain terms, a violation under § 1692c(b) would be established only if the underlying debt qualified as a "debt" within the meaning of the FDCPA, the judgment debtor was a "consumer" as defined therein, and LBN was a "debt collector" under the FDCPA. *See* 15 U.S.C. § 1592c(b). LBN's responses and conduct support plaintiff's claim that LBN considered

itself a "debt collector" of the "debt" of a "consumer" such that the FDCPA applied to LBN's actions in the course of attempting to collect that debt, rendering summary judgment on the issue improper.

B. Alleged Violation of the FDCPA

Plaintiff claims that LBN violated the FDCPA when it initiated garnishment proceedings with sworn statements that LBN "verily believe[d], as an attorney for the plaintiff, that Best Buy Co. of Minn Inc. is indebted to or has property within its possession or under its control, belonging to the Judgment Debtor/ Defendant Melissa Estes." She asserts that the statement was not true, such that it was a "false, deceptive or misleading representation or means in connection with the collection of any debt," in violation of § 1692e, and constitutes an "unfair or unconscionable means to collect or attempt to collect any debt," in violation of § 1692f. Plaintiff also contends that LBN's conduct generally violated § 1692d, which prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt."

Neither party has cited, and the Court has not located, any case law in this Circuit which is directly on point with the facts presented here. However, some courts have determined that a plaintiff may maintain FDCPA claims based upon false or deceptive statements in garnishment communications. *See, e.g., F.T.C. v. LoanPointe, LLC*, 525 F. App'x 696 (10th Cir. 2013) (district court found that wage garnishment letters to employer were deceptive, in violation of § 1692e, where they falsely informed employers that the creditor was authorized to garnish wages without a court order and that they had afforded borrowers the opportunity to dispute the debt); *Todd v. Weltman, Weinberg & Reis Co.*, 348 F. Supp. 2d 903 (S.D. Ohio 2004) (denying motions for judgment on pleadings where plaintiff's allegations – that attorneys filed false or deceptive

garnishment affidavits – supported maintenance of FDCPA claims under §§ 1692e and 1692f), aff'd, 434 F.3d 432 (6th Cir. 2006).

The record evidence in this case, considered in a light most favorable to the plaintiff, establishes the existence of factual disputes which preclude summary judgment. When Miramontes found a linkedin.com listing for a Melissa Estes who was employed by Best Buy in Tulsa, Oklahoma, she "believed *it was possible* that the judgment debtor was employed by Best Buy," so she added Best Buy as a potential place of employment, which resulted in LBN's initiation of garnishment proceedings as to Best Buy. (Doc. 49-2 at 2, emphasis added). Miramontes's internet search also located an Edmond school teacher, and Miramontes believed that "one of them" – either the Best Buy employee or the Edmond school teacher – was likely the judgment debtor. (Doc. 59-1 at 69 of 179). Miramontes could have obtained a credit report on the judgment debtor to try to verify employment information, which would be "the most accurate information" about the debtor, but she did not run a credit report because LBN trained her that "[i]t cost money to order a credit report, so if we have a *strong belief on information*, we try to avoid that." (*Id.* at 66-67, emphasis added).

James Belcher, who was the manager of LBN's collectors and was designated by LBN to testify as its representative, testified that he did not know what "verily" means. (Doc. 59-1 at 32). Initially, he claimed that "verily" means "[p]ossibly" (*id.*), but then clarified that he was not sure what the word means and thus, he "can't attest to the accuracy of" the garnishment affidavit (*id.* at 33-35).[5] He further testified that it did not concern him that he was unaware of the meaning of the term. (*Id.* at 34).

---

[5] "Verily" is defined as "in truth: certainly" and "truly, confidently." *Verily*, Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/verily (July 23, 2015).

There is a genuine dispute of material fact as to whether LBN's statement that it "verily believed" that Best Buy owed money to the judgment debtor was false or deceptive. The determination of that issue is for the trier of fact.

### C. Bona Fide Error

LBN asserts that, if there was a violation of the FDCPA, the violation was the result of a "bona fide error," such that LBN is not liable. (Doc. 58 at 26). With respect to the bona fide error defense, the FDCPA provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). In support of its defense, LBN asserts that, because it provides an employer the judgment debtor's SSN, "[t]he evidence shows that garnishments issued by LBN are carefully designed to reach only the assets of the true judgment debtor. This procedure was followed in this case." (Doc. 58 at 27).

In response, plaintiff asserts that there was no mistake and that LBN intentionally filed a false garnishment affidavit, indicating that it "verily believe[d]" that Best Buy had property or was indebted to the judgment debtor, when it did not so believe. (Doc. 59 at 27). For the same reasons noted above, whether LBN's garnishment affidavit was false is an issue of fact, and whether any error in the affidavit was the result of a bona fide, unintentional error is also an issue of fact. The summary judgment record does not establish, by a preponderance of the evidence, that LBN made an unintentional, bona fide error under § 1692k(c).

**IV.    Conclusion**

There are issues of fact which preclude summary judgment, and LBN has not established that it is entitled to judgment as a matter of law.  The Motion for Summary Judgment (Doc. 49, as supplemented by Doc. 58), is **denied**.

SO ORDERED this 24th day of July, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE